IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | |
|---|---|
| EVELYN C. SAUCIER, JOYCE M. THOMAS and CHARLES THOMAS; WILLIAM S. BROOKS, JR.; GENEVA P. WALDROP and ROBERT T. WALDROP and WINNIE F. GOSDIN, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED WISCONSIN LIFE INSURANCE COMPANY, AMERICAN MEDICAL SECURITY, INC.; AMSOUTH BANK; WILLIAM G. MOZINGO; DAVID SULLIVAN; BRYAN CREPS; RON PRIDMORE; and, DONIS B. McWATERS, <br><br> Defendants. | RECEIVED JUN 1 5 2001 <br> PL-DEFS' MOTION TO DISMISS <br><br> Civil Action No.: CV-01-1188-HYT |

## DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COME NOW United Wisconsin Life Insurance Company (hereinafter "UWLIC"), American Medical Security, Inc. (hereinafter "AMS"), AmSouth Bank (hereinafter "AmSouth") and Ron Pridmore, defendants in the above-styled cause, and without waiving any objection as to venue or other Rule 12 defenses, move this Court to dismiss the plaintiffs' Complaint and Amended Complaint, pursuant to Rule 12(b)(6) of the Ala. R. Civ. P., because the Complaint and Amended Complaint fail to state a claim against them upon which relief can be granted. As grounds for their motion, defendants show unto the Court as follows:

### INTRODUCTION

On or about April 10, 2001, Evelyn C. Saucier filed a complaint in the Circuit Court of Mobile County, Alabama alleging state law claims against UWLIC, AMS,

EXHIBIT B

06/19/2003  14:36   4386964                                                     PAGE  03/35

AmSouth and William G. Mozingo. The Complaint alleged the following counts: fraud; fraudulent concealment; conspiracy; breach of fiduciary duty; and, breach of contract. [Complaint, Counts I through V] Plaintiff's claims arose out of a health insurance policy that was purchased by the plaintiff. The policy was underwritten by UWLIC and administered by AMS (a third party administrator).

On or about May 5, 2001, plaintiff amended her complaint to add additional plaintiffs: Joyce M. Thomas and Charles Thomas; William S. Brooks, Jr.; Geneva P. Waldrop and Robert T. Waldrop; and, Winnie F. Gosdin. [Amended Complaint] The Amended Complaint also added the following additional defendants: David Sullivan; Bryan Creps; Ron Pridmore; and, Donis B. McWaters. [*Id.*] The Amended Complaint alleged the same counts as the original Complaint. [*Id.*]

Plaintiffs allege that the "defendants" made misrepresentations to them concerning a policy of health insurance they purchased. The misrepresentations were allegedly made to them orally. [Amended Complaint, ¶¶ 30 and 31, pp. 5-6]

Specifically, the plaintiffs allege that they were told the premium rates charged were for group rates, but in fact were based upon individual claims history. [Amended Complaint, ¶¶ 30 and 34, pp. 5 and 6] Furthermore, the plaintiffs contend that the premium rate increases on the "group" policies sold to them were subject to "improper and illegal rate increases." [Amended Complaint, ¶ 54, p. 11]

06/13/2003 14:36   4386964   PAGE 04/35

## ARGUMENT

I. **THERE IS NO PRIVATE CAUSE OF ACTION AVAILABLE TO THE PLAINTIFFS.**

A. *The Insurance Department Has The Exclusive Power To Regulate And Remedy Alleged Rate Violations.*

"In Alabama, the regulation of insurance rates, rating systems ... is purely a legislative function. The Alabama Legislature has created the department of insurance and has provided that the commissioner is to regulate and approve rates, rating systems .... [I]t is the commissioner, ..., who determines whether a particular rate or rating system ... is unreasonably high, excessive or unfairly discriminatory, ...". Allen v. State Farm Fire And Cas. Co., 59 F. Supp. 2d 1217, 1229 (S.D. Ala. 1999). The commissioner is likewise provided the authority to remedy rate violations. *See* Ala. Code § 27-12-1 *et. seq.* (1975) (the "Trade Practices Act"). As noted by the Court in Farlow v. Union Cent. Life Ins. Co., 874 F.2d 791 (11th Cir. 1989), "[t]he Alabama Trade Practices Act establishes a scheme of comprehensive rules, regulations, and penalties for violations of [the] rules" and "delegates its enforcement to [the commissioner] by specifically granting the commissioner several remedies and establishing the procedures for pursuing such remedies."(citations omitted) Because of the commissioner's broad authority to enforce insurance rating practices, the Eleventh Circuit found that no private cause of action existed for a violation of the Insurance Code in Alabama. In doing so, it said that "federal courts should be reluctant to read private rights of action in state laws where state courts and state legislatures have not done so." Id. at 795. The Court further noted that "the creation of a private right of action by a federal court abrogates both the prerogatives of the political branches and the obvious authority of states to sculpt the

3

content of state law." Id. Cf. Ex parte Exxon Corp., 725 So. 2d 930 (Ala. 1998) (consumers could not bring a class action under the deceptive trade practices act because the act precluded such a private cause of action).

The Court in Allen, supra, extended this reasoning even further, holding that not only was there no private cause of action for alleged rate violations by two insurance companies but that the private actions were also barred by the filed-rate doctrine. This holding has been adopted recently by an Alabama State Court judge in a similar case, Sharon Jackson v. American Medical Security, et al. A copy of the Court's opinion is attached hereto as Exhibit 1. Based on the Allen decision, Judge Bush held that the "power to regulate insurance rates and the authority to remedy insurance rate violations has been instilled in the Department of Insurance, specifically, the commissioner." See Exhibit 1, p. 3.

B. **Plaintiffs' Lawsuit Is Barred By The Filed-Rate Doctrine.**

The filed-rate doctrine "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue." Calico Trailer Mfg. Co. v. Ins. Co. of North America, 155 F.3d 976, 977 (8th Cir. 1998). It "'is designed to insulate from challenge the filed rate deemed reasonable by [a] regulatory agency.'" Peachtree Cas. Ins. Co., Inc. v. Sharpton, 768 So. 2d 368, 372 (Ala. 2000) (quoting Allen v. State Farm Fire & Cas. Co., 59 F. Supp. 2d 1217, 1227 (S.D. Ala. 1999)) (alteration original). "The filed rate doctrine recognizes that when the legislature has established a scheme for rate-making, the rights of the ratepayer in regard to the rate he pays are defined by that scheme." Id. (citing Taffet v. Southern Co., 967 F.2d 1483 (11th Cir. 1992)). The doctrine also "holds consumers to a conclusive

4

presumption of knowledge of the contents of the tariff that the utility with which the consumer does business as filed with the appropriate regulatory agency." QCC, Inc. v. Hall, 757 So. 2d 1115, 118 (Ala. 2000) (citation omitted). *See also* Emperor Clock Co., Inc. v. AT&T Corp., 727 So. 2d 41 (Ala. 1998) (under the filed-rate doctrine, a consumer of a regulated service is conclusively presumed to have notice of the contents of the tariff and may not claim that it is entitled to any rate other than the rate contained in the tariff); American Tel. & Tel. Co. ("AT&T") v. Central Office Tel., Inc., 524 U.S. 214, ___, 118 S. Ct. 1956, 1963 (1998) (under the filed-rate doctrine, "even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff"); Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2nd Cir. 1994) (under filed-rate doctrine, "any 'filed-rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings") (cited in Allen v. State Farm Fire & Cas. Co., 59 F. Supp. 2d 1217, 1227 (S.D. Ala. 1999)).

Although the filed-rate doctrine has its origins in federal communications law, the Alabama Supreme Court has applied the rationale of this doctrine to state regulatory issues. *See* Peachtree Cas. Ins. Co., 768 So. 2d at 372. *See also* Taffet v. Southern Co., 967 F.2d 1483, 1494 (11th Cir. 1992) (*en banc*) (rationale underlying the filed-rate doctrine applies "whether the rate at issue has been set by a state rate-making authority or a federal one"), cert. denied, 506 U.S. 1021 (1992); Allen, 59 F. Supp. 2d at 1228 (rationale underlying filed-rate doctrine to federal agencies applies equally to regulation by state agencies). Indeed, the doctrine has been applied in the context of insurance matters regulated by the Alabama Department of Insurance. *See* Allen, 59 F. Supp. 2d at

1226 ("The principle underlying this doctrine is that state agencies, such as the Alabama department of insurance [sic], are 'deeply familiar with the workings of the regulated industry and utilize this special expertise in evaluating the reasonableness of rates.'").

The plaintiffs specifically argue that "the defendants imposed improper and illegal rate increases." [Amended Complaint, ¶ 54, p. 11] Notwithstanding that the plaintiffs attempt to couch their claims as common law causes of action, like in Allen and the other cases cited *supra*, they cannot overcome the bar created by the filed-rate doctrine. *See* Order attached hereto as Exhibit 1.

## II. THE BREACH OF CONTRACT CLAIM AGAINST AMS AND AMSOUTH IS BARRED BY THE COURT'S HOLDING IN LIGON.

Plaintiffs' Amended Complaint alleges that the "defendants AMS and AmSouth entered into contracts to provide 'group' insurance to plaintiffs . . .". [Amended Complaint, ¶ 65, p. 14] Plaintiffs contend that the "'defendants' breached the contract when they charged them premiums that were substantially more than the amount of premium due had those premiums been properly computed." [Amended Complaint, ¶¶ 66-67, p. 14]

As is evident from the Master Policy and Certificate of Insurance (attached hereto as Exhibit 2 and 3, respectively), upon which plaintiffs rely, defendants AMS and AmSouth are not parties to the "insurance contract" made the basis of plaintiffs' Amended Complaint.

The health insurance of the plaintiffs involving the defendants is provided pursuant to a Group Insurance Policy issued by United Wisconsin Life Insurance Company. The Policyholder of the Master Policy is The Prescription For Good Health Trust. The plaintiffs are employer/certificateholders under the Master Policy. [Master

6

Policy, attached hereto as Exhibit 2, and Certificate of Group Insurance, attached hereto as Exhibit 3] The Prescription For Good Health Trust Agreement provides that insurance contracts will be issued to the respective Trust but that it "will not perform any administrative duties or responsibilities for such contracts." [Prescription For Good Health Trust Agreement, attached hereto as Exhibit 4, p. 1, ¶ 3; p. 2, ¶ 9] Rather, such duties are delegated to a Third Party Administrator designated by United Wisconsin Life Insurance Company. [Exhibit 4, p. 1] The Agreement specifically states that the "receiving and processing [of] claims" is the responsibility of the Administrator. [Exhibit 4, p. 3, ¶ 9]

The Third Party Administrator designated by United Wisconsin Life Insurance Company to administer the policies is American Medical Security, Inc. [Exhibit 3, "Notice of Insurance Administrator and Insurance Company," p. 8]

While the Trust is a party to the separate Master Policies, their status is that of Policyholder and, pursuant to the Trust Agreements, they have no authority to determine benefits or deny claims submitted to the Third Party Administrator. The Trust's and the Trustee's (i.e. AmSouth) authority can be analogized to that of an independent broker. An independent broker has no authority to bind an insurance company. *See* Gray v. Great American Reserve Ins. Co., 495 So. 2d 602 (Ala. 1986) (*citing* MJM, Inc. v. Cas. Indemnity Exchange, 481 So. 2d 1136 (Ala. 1985)). Likewise, pursuant to the Trust Agreements, neither The Prescription For Good Health Trust nor the Trustee AmSouth have the authority to bind United Wisconsin Life Insurance Company with regard to benefit decisions. Absent the authority to render benefit decisions on behalf of the

06/19/2003  14:36   4386964                                                PAGE  09/35

insurance company, neither the Trust nor the Trustee (AmSouth) can be liable for alleged incorrect decisions.

Finally, the Trust Agreements specifically state that "No insured Participant, or beneficiary of an insured Participant shall have any claim against the Trust." [Exhibit 4, p. 4, ¶ 17] If a claim cannot be made against the Trust, likewise one cannot be made against AmSouth, as Trustee.

The application for the insurance in question, which was signed by the plaintiffs, states that "... the Applicant acknowledges and agrees to adhere to all provisions of the Trust Agreement." [MedOne Applications, attached hereto as Exhibit 5, p. 3 "Terms and Conditions of the Trust"]

American Medical Security, Inc., as the Third Party Administrator, and AmSouth Bank, as the Trustee is for the Prescription for Good Health Trust, are not parties to the insurance contract. [Master Policy and Certificate of Group Insurance, attached hereto as Exhibits 2 and 3] The Alabama Supreme Court held in Ligon v. O.N. Hughes Ins. Co., 551 So. 2d 183 (Ala. 1989), that non-parties to an insurance contract cannot, as a matter of law, be liable for a breach of an insurance contract.

## CONCLUSION

Based on the above, all of the plaintiffs' claims are due to be dismissed.

Respectfully submitted,

_____
Lynn Etheridge Hare (HAR110)
Kori L. Clement (CLE022)
Attorneys for Defendants American Medical Security, Inc., United Wisconsin Life Insurance Company, AmSouth Bank and Ron Pridmore.

OF COUNSEL:
HARE & CLEMENT, P.C.
Suite 1500, AmSouth-Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Telephone No.: 205/322-3040
Facsimile No.: 205/322-5577
E-Mail: hc@harelaw.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record by placing a copy of same in the United States Mail, properly addressed and postage affixed, this the 13th day of June, 2001, as follows:

Steve Olen, Esquire
S. Russ Copeland, Esquire
Olen, Nicholas & Copeland, P.C.
Post Office Box 1826
Mobile, Alabama 36633

J. Patrick Courtney, III, Esquire
Post Office Box 2205
Mobile, Alabama 36652-2205

Carroll H. Sullivan, Esquire
Clark, Scott & Sullivan, P.C.
Post Office Box 1034
Mobile, Alabama 36633

9

William G. Mozingo
622 Azalea Road
Mobile, Alabama 36609

Bryan Creps
15602 Calvin Richardson Road
Bay Minette, Alabama 36507

Donis B. McWaters
406 5th Street North
Oneonta, Alabama 35121

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　OF COUNSEL