06/19/2003 14:36   4386964                                                    PAGE  13/35

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

EVELYN C. SAUCIER, et al.,   *
                             *
        Plaintiffs,          *          PL-DEFS' MOTION TO DISMISS
                             *
v.                           *          CIVIL ACTION NO. CV-01-1188-HYT
                             *
UNITED WISCONSIN LIFE        *
INSURANCE COMPANY, et al.,   *
                             *
        Defendants.          *

PLAINTIFFS' BRIEF IN OPPOSITION TO
CERTAIN DEFENDANTS' MOTION TO DISMISS

Plaintiffs file this Brief in Opposition to Certain Defendants' Motion to Dismiss. Defendants United Wisconsin Life Insurance Company, American Medical Security, AmSouth Bank and Ronald Pridmore maintain in their motion to dismiss that the so called "filed rate doctrine" is a complete bar to Plaintiffs' complaint. The motion to dismiss is due to be denied on two separate grounds: (1) first, the matters set forth in the motion are not appropriate for a motion to dismiss, as they include factual matters not in the record, and (2) second, the filed rate doctrine does not apply in this case.

A.      **Defendants' Argument Is Inappropriate For a Motion to Dismiss.**

A motion to dismiss should be granted only if there is no set of facts which could be developed by a Plaintiff to entitle him/her to relief.

> Unless it appears beyond a reasonable doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief under some recognizable theory of law, the court should not grant a motion to dismiss a complaint.

EXHIBIT C

Rice v. United Ins. Co., 465 So.2d 1100 (Ala. 1984)(emphasis added).

In the present case, in order to advance the argument that the Plaintiffs' claims are barred by the filed rate doctrine, Defendants have attached a number of documents to their motion to dismiss and have made several factual assertions in their motion that are not supported by the record. The attachments to the motion to dismiss are due to be stricken, as a Rule 12 motion is limited to the matters contained in the complaint. Garris v. Federal Land Bank, 584 So.2d 791 (Ala. 1991). Further, to the extent that the Defendants rely on factual assertions in their motion, those factual assertions are also due to be ignored. The complaint is the only factual statement which tests a motion to dismiss. To the extent that the Defendants must rely on building a factual record to support their argument, the requirements of Rule 56 must be complied with. Therefore, Defendants' motion should be dismissed without even reaching the merits of the argument.

B.   **The Filed Rate Doctrine Does Not Apply.**

The filed rate doctrine is derived from the United States Supreme Court case of Keogh v. Chicago and Northwest Ry., 260 U.S. 156 (1922), and was historically developed to preserve the rate making procedures of the Interstate Commerce Commission to prohibit interstate common carriers from engaging in price discrimination. Later, the doctrine was extended to the telecommunications and electric utility industries to prevent those regulated entities from charging rates for services different than their filed rates. See, AT&T v. Central Office Telephone, Inc., 524 U.S. 214 (1998); Arkla Gas Co. v. Hall, 453 U.S. 571 (1981). The filed rate doctrine is not favored, particularly under the current trend of deregulation. See, Fax Telecom, Inc. v. AT&T, 138 F.3d 479 (2nd Cir. 1998)(the doctrine is "plainly a creature of a different time.") The doctrine

-2-

applies only where there is specific and direct regulation of the rates charged by a highly regulated industry. The stated purpose of the doctrine is twofold: (1) to prevent discrimination in rates whereby certain customers receive a lower rate than other customers; and (2) to prevent the judiciary from determining the reasonableness of the rates charged by a regulated industry when the legislature has established an administrative body to determine reasonableness. H.J. Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485 (8th Cir. 1992). Only if the complaint seeks to undercut one of these stated policies does the filed rate doctrine come into play. Neither situation is present in this case, and Defendants' motion is due to be denied.

1. <u>The Filed Rate Doctrine Does Not Apply to Unregulated or Partially Regulated Industries.</u>

The most glaring deficiency in the logic of Defendants' position is the assertion that the premiums charged to the Plaintiffs are so regulated that the filed rate doctrine applies. The Defendants do not cite to any specific code section which empowers the insurance department to determine the reasonableness of the premiums they charge. In fact, the Defendants cite only to the "Trade Practices Act" for justification that the Defendants in this case are so highly regulated that the filed rate doctrine should apply. Without a showing that the Defendants' premiums are specifically approved and highly regulated, this Court cannot apply the filed rate doctrine.

In a similar situation, a federal district court rejected a defendant's attempt to assert the filed rate doctrine as a defense in Hanson v. Acceleration Life Insurance Co., 1999 WL 33283345 (D. N.D. Mar. 16, 1999), a copy of which is attached hereto. In that case, the defendant life

-3-

insurance company argued that the North Dakota Insurance Department regulated the company's premiums so that the filed rate doctrine should apply. First, the court recognized the purposes of the filed rate doctrine set out above. The court specifically refused to apply the doctrine to plaintiff's complaint, noting that in North Dakota there was no statutory language indicating that the filed rate doctrine applied. The court further noted that there was no statutory language requiring approval of premiums for the type of insurance at issue in that case. The court concluded that the North Dakota Insurance Commissioner did not have the authority to set rates for the insurance policy involved. Consequently, the filed rate doctrine did not apply.

Likewise, in Alabama, the Insurance Commissioner does not have the authority to set rates for the policies at issue in this litigation. In fact, Alabama law specifically excludes health insurance premiums from the general rate making authority of the Insurance Commissioner. Ala. Code § 27-13-2 (1975) states as follows:

> The Commissioner is charged with the duty of the administration of all laws now relating, or hereafter relating, to insurance rates and rating systems of all companies authorized to do business in the State of Alabama **with the exception of rates of life and health and accident business and rates of title insurance.** (Emphasis added).

It is not enough for a Defendant to assert that it submits its premiums on an informational basis to the Department of Insurance. Simply submitting rates to an insurance department, which then may have the opportunity to take a position regarding those rates, is not the type of regulation to which the filed rate doctrine applies. The Ninth Circuit Court of Appeals explained in <u>Brown v. Ticor Title Insurance Company</u>, 982 F.2d 386 (9th Cir. 1992), that the filed rate doctrine applies only where rates are specifically approved. The court noted that the mere fact that a

regulatory body failed to disapprove a rate does not legitimize otherwise wrongful conduct, and does not give rise to the filed rate doctrine. See also, Weilmen Bros. and Elliott, Inc. v. Giannini, 909 F.2d 332 (9th Cir. 1990). Where there is no meaningful state review, the act of filing a proposed or actual rate does not legitimize a rate arrived at by improper action.

   2.   <u>Plaintiffs' Complaint Does Not Attack the Reasonableness of a Rate.</u>

The gravamen of Plaintiffs' claims in these cases is not that they have been charged an unreasonable rate. The basis of Plaintiffs' Complaint, as derived from the Complaint and deemed true for purposes of this motion, is that the Defendants established a marketing scheme where they systematically marketed and sold health insurance policies as group insurance. In fact, the Plaintiffs were sold health insurance policies that were not group policies, but were individual policies. While one result of the fraudulent conduct of the Defendants translated into premium increases which the Plaintiffs should not have received, the fraud was complete when the Plaintiffs purchased the so-called group health insurance policies. The fact that their damages may include the premiums which they paid for policies which were different than what was represented to them does not convert this case into one dealing with the reasonableness of rates.

It is well established in Alabama that when a Plaintiff is fraudulently induced to purchase an insurance policy which is different than what was represented to him/her, damages may include the premiums paid for the policy itself. See, <u>Boswell v. Liberty National Life Insurance Company</u>, 643 So.2d 580 (Ala. 1994).

The fact that the damages sought in this case may include, or may be measured in part by, the premiums that were paid does not convert this case to one dealing with the "reasonableness"

-5-

of rates. Plaintiffs allege that they were fraudulently induced into purchasing a policy of insurance and paying the premiums for that policy. Even if the premiums were regulated to such an extent that the doctrine applied (which they are not), claims of fraudulent inducement do not implicate the filed rate doctrine. In discussing the filed rate doctrine, the court in <u>Nordlicht v. N.Y. Telephone Co.</u>, 617 F. Supp. 220, 227 (S.D. N.Y. 1985), aff'd 799 F.3d 859 (2nd Cir.), explained:

> Claims of fraud are different. The filed rate doctrine is designed to protect utilities charging filed rates for lawfully provided service. It is of no help to a defendant which fraudulently induces a plaintiff to pay filed rate or which otherwise exacts payment by fraud. There is nothing in the policy underpinnings of the doctrine which would cause it to protect defendant which unlawfully exacts a payment, even at a lawful rate. (Emphasis added).

As stated above, the filed rate doctrine only applies if Plaintiffs' complaint seeks to test the reasonableness of the rates charged. As noted by the court in <u>Gelb v. AT&T</u>, 813 F. Supp. 1022 (S.D. N.Y 1993):

> Because the liability in this case is not what a reasonable rate should be but whether the defendant AT&T committed fraud and violated RICO in inducing customers' use of its calling cards, a determination of what the rate should have been can enter in (if at all) only at the point of determining damages. As the Court's discussion will highlight, the usual policy justifications for applying the filed rate doctrine are thus not applicable to the nature of the fraud alleged here. (Emphasis added).

The same analysis applies here. <u>See also, Gulf State Utilities Companies v. Alabama Power Company</u>, 824 F.2d 1465 (5th Cir. 1987)(filed rate doctrine does not forbid the court to set aside contracts obtained by fraud). Because the complaint here alleges that the Plaintiffs were

-6-

fraudulently induced to pay the premiums charged, no violation of the filed rate doctrine exists.

The distinction between fraudulently inducing a plaintiff to pay a filed rate, versus a plaintiff challenging the reasonableness of a rate, is highlighted by cases relied on by the Defendants where the filed rate doctrine has been applied. For example, in Taffet v. The Southern Co., 967 F.2d 1483 (11th Cir. 1992), plaintiffs brought suit against Southern Company and its subsidiaries, including Alabama Power Company, claiming that the utilities had submitted false and fraudulent information to the state public service commissions in order to obtain rate increases. The Eleventh Circuit properly held that since the plaintiffs were attacking the reasonableness of the filed rate, and the process used to obtain that rate, the filed rate doctrine applied and the exclusive remedy available to the Plaintiffs was to seek redress before the various regulatory commissions.

Likewise, in Allen v. State Farm Fire and Casualty Co., 59 F. Supp 1217 (S.D. Ala. 1999), the plaintiffs attacked the inclusion of hurricane deductibles in property and casualty insurance policies where the regulatory body, there the Department of Insurance, had specifically approved the inclusion of such provisions as being reasonable. No similar allegation is made in the case before this Court, and the filed doctrine does not apply.

The court in Allen noted the distinction between cases attacking the decision of the insurance commissioner and cases where the premium paid represented plaintiff's damages such as Ex parte Blue Cross, Blue Shield, 582 So. 2d 467 (Ala. 1991), and McCullar v. Universal Underwriters Life Ins. Co., 687 So. 2d 156 (Ala. 1996), where the filed rate doctrine did not apply. In discussing Ex parte Blue Cross and McCullar, the Allen court stated that:

-7-

> They are not rate cases because the plaintiffs did not attack actual approval of the commissioner. In the case before the Court, plaintiffs attacked the approval of the deductible by the commissioner and therefore this challenge falls within the filed rate doctrine and must be addressed at least in the first instance by the commissioner. (Emphasis added).

In describing the case before it, the Allen court stated that the:

> plaintiffs' claims here amount to a direct attack on the precise application of a deductible specifically approved by the commissioner.... The commissioner has the expertise in the area of setting insurance rates, including the hurricane deductible at issue here, and the commissioner's judgment on this issue should not be overridden by a court. (Emphasis added).

Compared to the facts presented in this case, the Allen court's description highlights the differences between the two actions. In this case, there is no rate determined by the commissioner, and there is no commissioner's judgment in setting a rate. This action is not a rate case. This action is a fraud case attacking the fraudulent misrepresentations made to the Plaintiffs to induce them to purchase the subject policies.

Nothing in the Plaintiffs' complaint impacts the second prong of the filed rate doctrine which prevents discriminatory pricing by regulated industries. The second purpose of the doctrine is to insure that all customers of a highly regulated industry pay the actual rate approved by the regulatory body. Therefore, generally a plaintiff may not sue to enforce an agreement or promise which would allow him/her to pay a lower rate than that specified in the approved rate. Nothing in the Plaintiffs' complaint seeks such a determination, and the filed rate doctrine simply does not apply.

-8-

### C. The Alabama Department of Insurance Does Not Have Exclusive Jurisdiction.

Contrary to Defendants' arguments, the Alabama Insurance Department does not have the exclusive power to regulate the insurance company's conduct. The Defendants maintain in their motion that the insurance department has the exclusive power to regulate and remedy rate violations. The Defendants selectively quote from Allen v. State Farm Fire & Casualty Co., 59 F. Supp. 2d 1217, 1229 (S.D. Ala. 1999), but fail to point out the several critical distinguishing elements of that case. First, the insurance at issue in that case was not health insurance, but homeowners insurance which has regulated rates. Second, the issue in Allen was the propriety of a policy provision specifically approved by the commissioner. Plaintiffs in Allen were trying to reverse a specific decision by the insurance commissioner that the challenged policy provision was reasonable.

The general authority granted to the Insurance Commissioner under the "Trade Practices Act" contained in Ala. Code § 27-12-1 et seq. does not vest the Commissioner with any sort of exclusive authority to determine whether the Plaintiffs were fraudulently induced into buying the subject policies. The Defendants' argument that the Trade Practices Act creates exclusive jurisdiction completely ignores the specific section dealing with the insurance department's authority to conduct hearings and redress violations. Ala. Code § 27-12-18(h) expressly states as follows:

> No order of the commissioner pursuant to this Trade Practices Law or order of court to enforce it shall in any way relieve or absolve any person affected by such order from any other liability, penalty, or forfeiture under law. (Emphasis added).

-9-

Thus, the specific provision giving the insurance commissioner authority to redress violations clearly states that it is non-exclusive, and that it does not divest this court of jurisdiction to redress the same wrong. Taking the Defendants' argument to its logical conclusion would mean that no insurance company could ever be held liable for insurance fraud in the State of Alabama, as virtually all actions taken by an insurance company are theoretically capable of redress by the insurance commissioner.

## CONCLUSION

For these reasons, Defendants' motion to dismiss is due to be denied.

Respectfully submitted,
OLEN, NICHOLAS & COPELAND P.C.
Post Office Box 1826
Mobile, Alabama 36633
(334) 438-6957

_Steve Olen_
STEVE OLEN (OLE001)

_S. Russ Copeland_
S. RUSS COPELAND (COP018)

_J. Patrick Courtney, III_ SCO
J. PATRICK COURTNEY, III, (COU004)
Post Office Box 2205
Mobile, Alabama 36652-2205
(334) 694-1001

Attorneys for Plaintiffs

-10-

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 11th day of July, 2001, served a copy of the foregoing pleading on all counsel listed below by fax and/or by mailing same by United States mail, properly addressed, and first class postage prepaid.

Lynn E. Hare   (Fax)
Hare & Clement, P. C.
1901 Sixth Avenue, North
Suite 1500, AmSouth-Harbert Plaza
Birmingham, Alabama 35203

Jerry Dean Hillman
Walston, Wells, Anderson & Bains, L.L.P.
Post Office Box 830642
Birmingham, Alabama 35283-0642

Brian McCarthy
McDowell, Knight, Roedder
   & Sledge, L.L.C.
Post Office Box 350
Mobile, Alabama 36601

Bryan Creps
15602 Calvin Richerson Road
Bay Minette, Alabama 36507

William Mozingo
622 Azalea Road
Mobile, Alabama 36609

_____
STEVE OLEN