From:PITTMAN, HOOKS          205+328+2711          06/  /2003 14:08 #070 P.023/082

WLC
JCC
ICIC
JD
12-3-

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

PEGGY D. BEATY, et al.,                    )
                                           )
        Plaintiffs,                        )
                                           )
vs.                                        )   Civil Action No.: CV-99-0134
                                           )
AMERICAN MEDICAL SECURITY, INC.,)
et al.,                                    )
                                           )
        Defendants.                        )

## DEFENDANTS' BRIEF IN SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW American Medical Security, Inc. (hereinafter "AMS"), United Wisconsin Life Insurance Company (hereinafter "UWLIC"), Ronald M. Stell (hereinafter "Stell"), and Karen McCreary (hereinafter "McCreary"), defendants in the above-styled cause, and submit the following memorandum of law in support of their motion for summary judgment:

**I.    Introduction.**

On August 5, 1999, John and Peggy Beaty (hereinafter "Beatys") filed suit against UWLIC, AMS, Stell,[1] and McCreary.[2]  The Beatys' Complaint contains claims for fraudulent misrepresentation; fraudulent suppression; breach of contract; general negligence and wantonness; outrage, and negligent/wanton training or supervision. [Complaint, Counts I-VIII]  Each of these allegations is premised upon the calculation of the insurance premiums and the premium increase the Beatys incurred on April 1, 1999 for health insurance with UWLIC that they purchased in February 1995. [Complaint, ¶ 3,

---

[1] Stell was the independent insurance agent who sold the insurance to the Beatys.
[2] McCreary was a district sales manager for AMS.


EXHIBIT
E

From:PITTMAN, HOOKS        205+328+2711        06/  2003 14:08 #070 P.024/082

p. 2]  Specifically, the Beatys allege that, when they purchased the insurance, the defendants represented that:

> "their health insurance policy would not be rated due to the fact that plaintiffs had an autistic child nor that any increase in the premium in the future would have to be equally increased over all the policyholders at the same rate."

[Complaint, ¶ 1, p. 2]  All of the Counts alleged in the Beatys' Complaint refer to this single quote in support of all of their claims.

Each of these claims fail to create a genuine issue of fact suitable for trial, and Alabama law mandates a judgment in favor of AMS, UWLIC, Stell and McCreary.

II.    Standard of Review.

A motion for summary judgment should be granted if "there is no genuine issue as to any material fact and [...] the moving party is entitled to a judgment as a matter of law." Ala. R. Civ. P. 56(c); Bussey v. John Deere Co., 531 So. 2d 860 (Ala. 1988). Once a movant presents evidence that would entitle it to a judgment, the non-moving party must present "substantial evidence" in support of its claims to defeat the motion. McGinnis v. Continental Ins. Co., 628 So. 2d 470 (Ala. 1993). The nonmoving party may not overcome this burden by simply resting "upon the mere allegations or denials of his pleadings[.]" Hintzel v. Chubb Life Ins. Co. of Amer., 678 So. 2d 1140 (Ala. Civ. App. 1996). Rather, the movant's prima facie showing may only be rebutted if the nonmovant makes a strong showing of substantial evidence of "specific facts" which together create a genuine issue of material fact. See Ala. Code § 12-21-12 (1975); Hintzel, 678 So. 2d at 1143. "When a party opposing a properly supported motion for summary judgment offers no substantial evidence to contradict that presented by the movant, the trial court must consider the movant's evidence uncontroverted, with no

genuine issue of material fact existing." <u>Martin v. Arnold</u>, 643 So. 2d 564 (Ala. 1994)
(citation omitted).

III.    Argument.

    A.   The Filed-Rate Doctrine Bars all of the Beatys' Claims.

The Beatys' lawsuit is barred by the filed-rate doctrine because the filed-rate
doctrine prohibits collateral challenges to rates set by a regulatory agency, thereby
preserving the statutorily delegated authority of such agency. The filed-rate doctrine
further "prohibits a party from recovering damages measured by comparing the filed rate
and the rate that might have been approved absent the conduct in issue." <u>Calico Trailer</u>
<u>Mfg. Co. v. Ins. Co. of North America</u>, 155 F.3d 976, 977 (8th Cir. 1998). It "'is
designed to insulate from challenge the filed rate deemed reasonable by [a] regulatory
agency.'" <u>Peachtree Cas. Ins. Co., Inc. v. Sharpton</u>, 2000 WL 127186, 4 (Ala. 2000)
(quoting <u>Allen v. State Farm Fire & Cas. Co.</u>, 59 F. Supp. 2d 1217, 1227 (S.D. Ala.
1999)) (alteration original). "The filed rate doctrine recognizes that when the legislature
has established a scheme for rate-making, the rights of the ratepayer in regard to the rate
he pays are defined by that scheme." <u>Id.</u> (citing <u>Taffet v. Southern Co.</u>, 967 F.2d 1483
(11th Cir. 1992)). The doctrine also "holds consumers to a conclusive presumption of
knowledge of the contents of the tariff that the utility with which the consumer does
business as filed with the appropriate regulatory agency." <u>QCC, Inc. v. Hall</u>, 757 so. 2d
1115, 118 (Ala. 2000) (citation omitted). *See also* <u>Emperor Clock Co., Inc. v. AT&T</u>
<u>Corp.</u>, 727 so. 2d 41, (Ala. 1998) (under the filed-rate doctrine, a consumer of a regulated
service is conclusively presumed to have notice of the contents of the tariff and may not
claim that it is entitled to any rate other than the rate contained in the tariff); <u>American</u>

From:PITTMAN, HOOKS          205+328+2711          06/ ./2003 14:09 #070 P.026/082

Tel. & Tel. Co. ("AT&T") v. Central Office Tel., Inc., 524 U.S. 214, ___, 118 S. Ct.
1956, 1963 (1998) (under the filed-rate doctrine, "even if a carrier intentionally
misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be
held to the promised rate if it conflicts with the published tariff"); Wegonland Ltd. v.
NYNEX Corp., 27 F.3d 17, 18 (2nd Cir. 1994) (under filed-rate doctrine, "any 'filed-
rate'—that is, one approved by the governing regulatory agency—is per se reasonable
and unassailable in judicial proceedings") (citing in Allen v. State Farm Fire & Cas. Co.,
59 F. Supp. 2d 1217, 1227 (S.D. Ala. 1999)).

Although the filed-rate doctrine has its origins in federal communications law, the
Alabama Supreme Court has applied the rationale of this doctrine to state regulatory
issues. See Peachtree Cas. Ins. Co., 768 So. 2d 368. See also Taffet v. Southern Co., 967
F.2d 1483, 1494 (11th Cir. 1992) (en banc) (rationale underlying the filed-rate doctrine
applies "whether the rate at issue has been set by a state rate-making authority or a
federal one"), cert. denied, 506 U.S. 1021 (1992); Allen, 59 F. Supp. 2d at 1228
(rationale underlying filed-rate doctrine to federal agencies applies equally to regulation
by state agencies). Indeed, the doctrine has been applied to the context of insurance
matters regulated by the Alabama Department of Insurance. See Allen, 59 F. Supp. 2d at
1226 ("The principle underlying this doctrine is that state agencies, such as the Alabama
Department of Insurance, are 'deeply familiar with the workings of the regulated industry
and utilize this special expertise in evaluating the reasonableness of rates.'").

The Beatys contend that "any increase in the premium in the future would have
to be equally increased over all the policyholders at the same rate" [Complaint, ¶ 1, p.
2], thus defendants breached the contract of insurance with them. This is further

supported by the Beatys' testimony wherein they stated that their understanding of what Stell told them was that "premium increases would be spread out over the group and that the increases would not be very big." [Depo. of J. Beaty, p. 61; Depo. of P. Beaty, pp. 23-24]

Obviously, the alleged damages to be claimed by the Beatys are the difference in the premiums they allege they should have been charged [which they cannot specify], which are based on the rates filed with the Department of Insurance, and the premiums actually charged to the Beatys. In Taffet v. Southern Co., 967 F.2d 1483, 1491 (11th Cir. 192), the Court, applying the filed rate doctrine, specifically rejected a claim for such damages:

> The rate-setting schemes in both Alabama and Georgia are incompatible with a rate-payer's cause of action to recover damages measured by the difference between the filed rate and the rate that would have been charged absent some wrongdoing. Allowing consumers of the Utilities' services to recover damages for 'fraudulent' rates *or otherwise 'erroneous' rates* would disrupt greatly the states' regulatory schemes and, in the end, would cost consumers dearly. [emphasis supplied]

*See also* Allen v. State Farm Fire and Cas. Co., 59. F. Supp.2d 1217, 1227 (S.D. Ala. 1999)("The filed-rate doctrine 'prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue.'")(quoting Calico Trailer Mfg. Co. v. Insurance Co. of North America, 155 F.3d 976, 977 (8th Cir. 1998)). The Court's reference in its holding to "otherwise erroneous rates" clearly demonstrates that it intended its ruling to extend to not only fraud claims by consumers, but also any other type claim, including one for breach of contract, that include a recovery of damages involving the rates charged for the service or product provided.

From:PITTMAN, HOOKS          205+328+2711          06/   2003 14:09 #070 P.028/082

The Court in <u>Allen</u>, *supra*, also acknowledged the Commissioner's authority and found that the plaintiffs' claims were barred by the filed-rate doctrine. 59 F. Supp.2d 1217. The Court in <u>Allen</u>, in dismissing the plaintiffs' claims, stated that:

> "[I]n Alabama, the regulation of insurance rates, rating systems and policy forms is purely a legislative function. The Alabama legislature has created the department of insurance and has provided that the commissioner is to regulate and approve rates, rating systems and policy forms filed by insurance companies. [...] [I]t is the commissioner, based on his training and experience, who determines whether a particular rate or rating system filed by an insurance company for use with a particular form is unreasonably high, excessive or unfairly discriminatory, and whether the forms submitted comply with the laws and public policy of the state.

<u>Id</u>. at 1229.

An Alabama State Court judge in a similar case, *Sharon Jackson v. American Medical Security, Inc. et al*, recently adopted this holding in dismissing another case like the one herein. A copy of the Court's opinion is attached hereto as Exhibit 1. Based on the <u>Allen</u> decision, Judge Bush held that the "power to regulate insurance rates and the authority to remedy insurance rate violations has been instilled in the Department of Insurance, specifically, the Commissioner." *See* Exhibit 1, p. 3.

The Beatys' claim that they thought they purchased an insurance policy whose rates would be spread over the entire group falls within the filed-rate doctrine. *Cf.* <u>Id</u>. ("Filed-rate doctrine applies even where regulated entity allegedly defrauded administrative agency to obtain approval of filed rate.") Allowing the Beatys to circumvent the established statutory process for approval of insurance rates and policies by involving this Court in the rate-making process would undermine Alabama's current regulatory regime, which, through its statutory administrative remedies, is designed to be

self-policing.  As noted in <u>Allen</u>, *supra*, this is a result that cannot be allowed.  59 F. Supp.2d at 1229.

Notwithstanding that the Beatys attempt to couch their claims as common law causes of action, like in <u>Allen</u> and the other cases cited *supra*, they cannot overcome the bar created by the filed-rate doctrine.

**B. There Is No Private Cause of Action For The Claims Alleged By The Beatys.**

As noted above, an alternative basis for the Court's holding in <u>Allen</u> was that no private cause of action existed.  <u>Allen v. State Farm Fire And Cas. Co.</u>, 59 F. Supp.2d 1217, 1229 (S.D. Ala. 1999)(alleged violations of the Alabama Insurance Code do not exist "absent clear and specific evidence that the Alabama legislature intended to create a private right of action [...] for offering unconscionable rates and conditions." ).  *See also* <u>Ala. Code</u> § 27-3-27 (1975).  "In Alabama, the regulation of insurance rates, rating systems ... is purely a legislative function.  The Alabama Legislature has created the department of insurance and has provided that the commissioner is to regulate and approve rates, rating systems .... [I]t is the commissioner, ... , who determines whether a particular rate or rating system ... is unreasonably high, excessive or unfairly discriminatory, ...." <u>Allen v. State Farm Fire And Cas. Co.</u>, 59 F. Supp.2d 1217, 1229 (S.D. Ala. 1999).  The commissioner is likewise provided the authority to remedy rate violations.  *See* <u>Ala. Code</u> § 27-12-1 *et. seq.* (1975) (the "Trade Practices Act").  As noted by the Court in <u>Farlow v. Union Cent. Life Ins. Co.</u>, 874 F.2d 791 (11th Cir. 1989), "[t]he Alabama Trade Practices Act establishes a scheme of comprehensive rules, regulations, and penalties for violations of [the] rules" and "delegates its enforcement to [the commissioner] by specifically granting the commissioner several remedies and

establishing the procedures for pursuing such remedies."(citations omitted)  Because of the commissioner's broad authority to enforce insurance rating practices, the Eleventh Circuit found that no private cause of action existed for a violation of the Insurance Code in Alabama. In doing so, it said "federal courts should be reluctant to read private rights of action in state laws where state courts and state legislatures have not done so." Id. at 795. The Court further noted "the creation of a private right of action by a federal court abrogates both the prerogatives of the political branches and the obvious authority of states to sculpt the content of state law." Id. Cf. Ex parte Exxon Corp., 725 So. 2d 930 (Ala. 1998) (consumers could not bring class action under deceptive trade practices act because act precluded private cause of action).

Because of the Commissioner's broad authority to enforce insurance rating practices, the Eleventh Circuit found that no private cause of action existed for a violation of the Insurance Code in Alabama.  Thus, even if the Beatys were to overcome the bar of the filed-rate doctrine, their claim is still due to be dismissed because it is not a cognizable claim under the law of the State of Alabama.

### C.    The Beatys' Fraud And Suppression Claims Violate Rule 9 (b) And Should Be Stricken.

The Beatys allege in Counts III (fraud), IV (promissory fraud), V (deceit/fraudulent deceit) and VI (suppression) of their Complaint that the "defendants" misrepresented the following material facts:

> "their health insurance policy would not be rated due to the fact that plaintiffs had an autistic child nor that any increase in the premium in the future would have to be equally increased over all the policyholders at the same rate."

[Complaint, ¶ 1, p. 2]   The Beatys further allege that the "defendants" made these misrepresentations to them when they purchased the policy of health insurance that was submitted on February 28, 1995.   [*Id.*; Depo. of J. Beaty, pp. 31-34; Depo. of P. Beaty, pp. 23-24] The misrepresentations were allegedly made to them orally. [*Id.*]

Rule 9 (b) of the Alabama Rules of Civil Procedure requires that "all averments of fraud or mistake as well as the circumstances constituting fraud or mistake, shall be stated with particularity."   The Committee Comments to Rule 9 explain that "[T]he pleading must state the time, place, contents or substance of the false representations, the facts misrepresented and an identification of what has been obtained." *See* Ala. R. Civ. P. 9 (b), Committee Comments. *See also* <u>Robinson v. Allstate Ins. Co.</u>, 399 So. 2d 288 (Ala. 1981). The purpose of Rule 9 (b) is to provide adequate notice to the opposing party of the claims for fraud so that they may properly prepare their case. *See* <u>Carun v. Teagle</u>, 345 So. 2d 1331 (Ala. 1977).   Generalized or conclusory statements of fraud are not sufficient. *See* <u>McAlister v. Deatherage</u>, 523 So. 2d 387 (Ala. 1988).

The Beatys' Complaint avers that "defendants" made misrepresentations; however, it fails to state specifically when these misrepresentations were made or how and when the Beatys discovered them.  The Beatys' Complaint does not apprise the defendants of the content and manner in which these facts misled the Beatys nor what the defendants gained by this misrepresentation/suppression.  Additionally, when questioned about the basis of their fraud claim in their depositions, both Mr. and Mrs. Beaty could provide no facts to support it.  [Depo. of J. Beaty, pp. 61-64; Depo. of P. Beaty, pp. 54-56] *See also* Ala. R. Civ. P. 9(b) (In averments of fraud or mistake, the circumstances constituting fraud or mistake *shall* be stated with particularity.)  Moreover, the purpose of

Rule 9, which requires that a fraud action be pled with particularity, is to ensure that the defendants have sufficient information to formulate their defenses by putting them on notice of conduct complained of, to protect defendants from frivolous lawsuits, *to eliminate fraud actions in which all facts are learned after discovery*, and to protect defendants from harm to their goodwill and reputation. *See* Ala. R. Civ. P. 9 (b); U.S. ex rel Stinson, Lyons, Gerlin & Bustamante v. Blue Cross & Blue Shield of Ga., 755 F. Supp. 1055 (S.D. Ga. 1990).

The Beatys' failure to comply with the requirements of Rule 9(b) is a basis for the denial of the Beatys' claim for relief. *See generally* Ala. Civ. P. 9(b); Morrison Ass. Co. v. North American Reinsurance Corp., 588 F. Supp. 1324 (N.D. Ala. 1984) (citing State Farm Fire & Cas. Co. v. Fincher, 454 So. 2d 936 (Ala. 1984))(Rule 9(b) limits the right of amendment during trial where fraud is the issue, because fraud must be pled with particularity for the purpose of advising the defendant in advance of trial exactly what the defendant is called upon to defend against.)

### D.    Beatys' Claims Of Fraud And Suppression Are Barred By The Statute Of Limitations.

In addition to the above, the defendants respectfully move the Court for an Order dismissing the claims of the Beatys for fraud and suppression as being barred by the two-year statute of limitations. *See* Ala. R. Civ. P. 9(c); Ala. Code § 6-2-38 (1975); Henson v. Celtic Life Ins. Co., 621 So. 2d 1268 (Ala. 1993).

The Beatys' suit was filed on August 5, 1999, over two (2) years after the alleged misrepresentation of facts.[3]  The statute of limitations for an action for fraud and/or suppression is two years, subject to the tolling of said statute by repose until the plaintiff

knew or should have known of said fraud. *See* Ala. Code §§ 6-2-38 and 6-2-3 (1975). From the face of the Complaint, the fraud claims of the Beatys arose on or about February 28, 1995 and possibly shortly thereafter (when they received their policy) and thus expired before the Complaint was filed unless the running of the statute of limitations was tolled by repose. Moreover, after receiving their first premium increase letter in February 1996, Mrs. Beaty called AMS to inquire about the increase. [Depo. of P. Beaty, p. 48]  Thus, the Beatys had notice of the premium increase, and had questions about it, as early as 1996, over two years before they filed their lawsuit.

To assert repose as a basis for tolling the statute of limitations, the plaintiffs must aver *with particularity* how and when the alleged facts and circumstances constituting fraud were discovered *and the facts and circumstances preventing a discovery of the fraud before the bar of the statute is complete.* *See* Ala. R. Civ. P. 9 (c); Mixon v. Cason, 622 So. 2d 918 (Ala. 1993); Blackmon v. Chrysler Motor Corp., 318 So. 2d 286 (Ala. 1975); Johnson v. Shandoah Life Ins. Co., 281 So. 2d 636 (Ala. 1973).  A failure to specifically plead repose is grounds for dismissal. Id.  **As to repose, the Beatys' Complaint herein is silent. Their testimony adds nothing either.**

Even if plaintiff were to have pled repose, if the plaintiff had knowledge of facts that "would have put a reasonable person on notice of the [alleged] fraud," the tolling of the statute does not apply. Foremost Ins. Co. v. Parham, 693 So. 2d 409 (Ala.1997). As noted in Foremost, the receipt of documents that would have provided facts that would have put a reasonable person on notice of the alleged fraud, *as a matter of law*, can bar the tolling of the statute. Id. ("In addition, a return to the 'reasonable reliance' standard

---

[3] The Beatys allege that the defendants made these misrepresentations to them when they filled out the application for insurance on February 28, 1995. [Complaint, ¶ 1, p. 2]

will once again provide a mechanism, which was available before *Hickox*, whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms.").

The Beatys' Complaint contends that certain information, contrary to the documents provided to them at the time they took out the insurance, was misrepresented/suppressed from them. [Complaint, ¶ 1, p. 2 and Counts III-VI] However, neither the Beatys' Complaint nor their deposition testimony provides any information about how or when they learned about any new information that led them to believe that they had been defrauded. [Depo. of J. Beaty, pp. 61-64; Depo. of P. Beaty, pp. 54-56] This void in the Beatys' Complaint and their testimony requires that their claims be dismissed. *See* Mixon, *supra;* Blackmon, *supra;* Johnson, *supra.*

As the statute of limitations for outrage is also two years, these same arguments demonstrate that it too is time barred and due to be dismissed. *See* Ala. Code § 6-2-38 (1975). *See also* Archie v. Enterprise Hospital & Nursing Home, 50 So. 2d 693 (Ala. 1987 ("the statutory period of limitations for the tort of outrage is two years").

**E. The Beatys Have Failed To Substantiate Their Fraud And Suppression Claims.**

Count III to VI of the Complaint relies solely on the following allegations in support of their claims:

> "their health insurance policy would not be rated due to the fact that plaintiffs had an autistic child nor that any increase in the premium in the future would have to be equally increased over all the policyholders at the same rate."

[Complaint, ¶ 1, p. 2] The elements of a suppression claim under Alabama law are: (1) a duty to disclose the material facts; (2) the suppression of material facts by the defendants; (3) defendants' actual knowledge of the facts and their materiality; (4) action by the plaintiff because of her lack of knowledge of the facts; and (5) actual damage to the plaintiff as a proximate cause. Hardy v. Blue Cross and Blue Shield, 585 So. 2d 29 (Ala. 1991). The insurance policy clearly sets forth the defendants' rights regarding changing/increasing premiums. Specifically, the policy states that the health insurance premiums can be raised every three months in accordance with the filed rate tables. [Insurance Policy, p. 16] The Beatys admit receiving their Certificate shortly after purchasing the policy in February 1995; that they reviewed it after receiving it; and that they periodically received updates with the same information. [Depo. of P. Beaty, pp. 42-43] The Beatys now contend that the information provided in the Certificate of Group Insurance provided to them, which contains the Premium Rate Change Section, is contrary to what was represented to them in February 1995. In summation, the Beatys' fraud/suppression claim arises solely from the Beatys' "understanding"[4] of what Stell told them. However, the Beatys cannot tell the defendants whether or not what Stell told them is incorrect. [Depo. of P. Beaty, p. 55 (Q: What facts do you have that you can tell me that indicate that what Mr. Stell told you about this policy was not correct? A: I don't have any facts.)]

Even assuming the Beatys could meet the elements of the tort of fraud and/or suppression, the Beatys' position is flawed and their claims for fraud and/or suppression are still due to be dismissed. First, the Beatys have no facts that what they were allegedly

From:PITTMAN, HOOKS          205+328+2711          06/ /2003 14:11 #070 P.036/082

told by Stell, which is the sole basis of their fraud/suppression claims, was in fact not true. [Depo. of P. Beaty, p. 55; Depo. of J. Beaty, p. 61]  They do not know any other MedOne certificateholders who did not get the same percentage premium increase or were not treated the same way that they were.  [Depo. of P. Beaty, p. 55; Depo. of J. Beaty, p. 59]  Thus, the Beatys' claims are due to be dismissed.

**F.    The Beatys Have Failed To Establish One Or More Of The Elements Essential To Their Breach Of Contract Claim.**

**1.    UWLIC is the only legal party to the breach of contract claim.**

The Alabama Supreme Court has consistently held that "only the parties to an insurance contract can be held liable for [...] breach of an insurance contract [...]." Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc., 551 So. 2d 283, 285 (Ala. 1989) (emphasis supplied) (citations omitted). In this case, it is undisputed that the Beatys had no insurance contract with either AMS, Stell or McCreary. [Insurance Policy]  The Beatys did not hold a contract of any kind with either AMS, Stell or McCreary, much less one that provided insurance benefits. [*Id.*]  Rather, the Beatys' insurance contract was with UWLIC and no other entity.[5] [Insurance Policy]  Thus, only UWLIC may be held liable for any claims that are based upon the insurance contract. Accordingly, the breach of contract claim against AMS, Stell and McCreary fails as a matter of law. Ligon, 551 So. 2d at 285.

---

[4] The Beatys cannot articulate exactly what Stell told them, just what they understood him to say. [Depo. of J. Beaty, p. 61; Depo. of P. Beaty, pp. 23-24]

[5] AMS, through its administrative contract with UWLIC, acts as a third party administrator in processing medical claims from providers and determining if the claims should be paid according to the insurance policy issued by UWLIC. [Insurance Policy]

2.    The Beatys have failed to state a cause of action for breach of contract.

A breach of contract is defined as a "failure, without legal excuse, to perform any promise which forms the whole or part of a contract." *See* Mann v. Bank of Tallassee, 794 So. 2d 1375 (Ala. Civ. App. 1996) (citing Black's Law Dictionary 188 (6th ed. 1990); 17A Am Jur. 2d Contract Section 716 (1991)). To establish that a breach of contract occurred, the "[Beatys] must prove: (1) the existence of a valid contract binding the parties in the action, (2) [their] own performance under the contract, (3) the defendants' nonperformance, and (4) damages." Southern Medical Health Systems, Inc. v. Vaughn, 669 So. 2d 98, 99 (Ala. 1995) (citations omitted). Count I of the Beatys' Complaint alleges that "defendants"[6] breached their agreement when they were told that "their health insurance policy would not be rated due to the fact that [the Beatys] had an autistic child nor that any increase in the premium in the future would have to be equally increased over all the policyholders at the same rate." [Complaint, ¶ 1, p. 2] The undisputed facts surrounding the Beatys' claims directly refute this allegation.

The only contract between the Beatys and UWLIC was the Certificate of Insurance. The Certificate of Insurance issued to the Beatys contains a section entitled "PREMIUMS." [Insurance Policy, p. 16] This section pertains to, among other things, the computation of premiums and changes in premium rates. [*Id.*] Specifically, the "PREMIUMS" section provides, in pertinent part, as follows:

**PREMIUM COMPUTATION**

Premium charge or credit due to increase or decrease in insurance becomes effective on the first of the month on or after the date of change,

---

[6] Again, only UWLIC is the proper party to the Beatys' contract claim since only UWLIC maintains an insurance contract with the Beatys. *See* Ligon, 551 So. 2d at 285.

From:PITTMAN, HOOKS                205+328+2711              06/  /2003  14:12  #070 P.038/082

or on the date of change. We will make the adjustment retroactive for up to a maximum period of 60 days.

If premiums are due Us or We owe a refund in premiums because of clerical error in the information We receive, We will make an adjustment.

### PREMIUM RATE CHANGE

We reserve the right to change the table of premium rates every three months.

The premium rates that apply are based on the rates in effect when the insurance first becomes effective under the Policy. We have the right to change the premium rates on any premium due date. We will provide the certificate holder with a minimum of 20 days advance written notice before the change in premium goes into effect.

[*Id.*]

Unless the Beatys can prove that UWLIC, as allowed under the insurance policy, could not increase the premiums, the Beatys are not entitled to recover. The Beatys cannot show that UWLIC is not entitled to increase the Beatys' premiums in accordance with the rate plan filed with the Department of Insurance. As such, the Beatys have failed to meet their burden and they are prohibited from any further pursuit of their claim.

    G.    **The Beatys' Negligence And Wantonness Claims Are Mere Restatements Of Their Breach Of Contract And Fraud Claims And Likewise Fail.**

Count II of the Beatys' Complaint alleges that the "defendants'" conduct was negligent, reckless and/or wanton. [Complaint, Count II] The only facts given to support this claim is that "their health insurance policy would not be rated due to the fact that plaintiffs had an autistic child nor that any increase in the premium in the future would have to be equally increased over all the policyholders at the same rate." [Complaint, ¶ 1, p. 2]

In order for the Beatys to recover against the defendants for negligence, the Beatys must prove that the defendants owed a duty of care to them, that the defendants breached that duty, that they suffered loss or injury, and that the defendants' negligence was the actual and proximate cause of that loss or injury. Loliar v. Poe, 622 So. 2d 902 (Ala. 1993); *See also* Graveman v. Wind Drift Owner's Ass'n, Inc., 607 So. 2d 199 (Ala. 1992). The Beatys also seek damages for wantonness. "Wantonness" is defined by statute as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code §6-11-20(b)(3) (1975). The Alabama Supreme Court has described wantonness as 'the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." Alfa Mut. Ins. Co. v. Roush, 723 So. 2d 1250, 1256 (Ala. 1998) (citing Bozeman v. Central Bank of the South, 646 So. 2d 601 (Ala. 1994)). Moreover, §6-11-20(a) allows an award of punitive damages only "where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice." "Clear and convincing evidence" is "evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." Pitt v. Century II, Inc., 631 So. 2d 235 (Ala. 1993).

McCreary is due to be dismissed in that the Beatys never met or spoke with her. [Depo. of J. Beaty, p. 65] Moreover, as the Beatys' negligence and wantonness claims are premised solely on what Stell allegedly told them, and they cannot articulate anything he told them that was in fact incorrect, the Beatys have failed to prove that any

From:PITTMAN, HOOKS          205+328+2711          06(  )/2003 14:12 #070 P.040/082

duty was owed, let alone breached.  [Depo. of P. Beaty, p. 55 (Q: What facts do you

have that you can tell me that indicate that what Mr. Stell told you about this policy was

not correct? A: I don't have any facts.)]  These claims are due to be dismissed.

### H.     The Beatys Have Failed To Demonstrate A Case For Outrage.

In their outrage claim, the Beatys allege that the

> "their health insurance policy would not be rated due to the
> fact that plaintiffs had an autistic child nor that any increase
> in the premium in the future would have to be equally
> increased over all the policyholders at the same rate, and
> that this statement constituted outrage.  The "defendants",
> in misrepresenting facts to the [Beatys], knew or should
> have known that such extreme or outrageous conduct
> would inflict extreme emotional distress upon the
> [Beatys]."

[Complaint, ¶ 1, p. 2 and ¶¶ 28-29, p. 9]  This claim fails as a matter of law.

Like claims for bad faith, a plaintiff bears a heavy burden in establishing a claim

for outrage.  To establish this type claim, the Beatys must

> "present substantial evidence indicating that [defendants] 'intentionally or
> recklessly' engaged in 'conduct so outrageous [...] and so extreme [...] as
> to go beyond all possible bounds of decency' and that caused 'emotional
> distress [...] so severe that no reasonable person could be expected to
> endure it.'"

Evans v. Mut. Assur., Inc., 727 So. 2d 66, 68 (Ala. 1999) (citing American Road Service

Co. v. Inmon, 394 So. 2d 361, 365 (Ala. 1980)) (other citation omitted) (alteration

original).  Alabama law defines "outrageous and extreme" conduct as "conduct so

outrageous in character and so extreme in degree as to go beyond all possible bounds of

decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

Jenkins v. United States Fidelity and Guaranty Co., 698 So. 2d 765, 768 (Ala. 1997).

Furthermore, "an outrage defendant 'is never liable [...] where he has done no more than

to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.'" State Farm Mut. Auto. Ins. Co. v. Scott, 707 So. 2d 238, 243 n. 3 (Ala. Civ. App. 1997) (citation omitted).

Consistent with this heavy burden imposed on plaintiffs, Alabama courts have repeatedly held that outrage is an extremely limited cause of action and is available only in the most egregious of circumstances. See Thomas v. BSB Indus. Contractors, Inc., 624 So. 2d 1041, 1044 (Ala. 1993). Consequently, these courts have held that no jury question existed in the vast majority of the outrage cases reviewed. See, e.g., Mahaosy v. Holiday Inns, Inc., 602 So. 2d 956 (Ala. 1993); Moore v. Spiller Assoc. Furniture, Inc., 598 So. 2d 835 (Ala. 1992); Kenworth v. Morgan, 593 So. 2d 55 (Ala. 1991); Baker v. State Farm Gen'l Ins. Co., 585 So. 2d 804 (Ala. 1991). Since Alabama first recognized outrage as a valid claim, the cases in which courts have found jury questions on such a claim fall into only four limited categories: (1) wrongful conduct in the context of family burials; (2) heavy-handed and barbaric means employed by an insurer to coerce an insured into settling a claim; (3) egregious sexual harassment; and (4) and obscene telephone calls and harassment by a police officer. See Ex parte Crawford & Co., 693 So. 2d 458, 460, n. 1 (Ala. 1997) (citing Thomas, 624 So. 2d at 1044); Woodley v. City of Jemison, 770 So. 2d 1093, 1095-96 (Ala. 1999).

Other than when Stell sold the policy to them, the Beatys had only one other communication with Stell regarding premiums and, in that conversation, Stell did not say anything. [Depo. of P. Beaty, p. 57] Mrs. Beaty had only one conversation with AMS regarding her premium notice and in that conversation AMS did not say anything. [Depo. of P. Beaty, 65] It is clear from the transactions between the Beatys and the

defendants that outrage simply is not present in this suit. Accordingly, the defendants are entitled to summary judgment in their favor on the outrage claim.

I.    Negligent And Wanton Training Of Agent.

The Beatys contend in Count VIII of their Complaint that AMS negligently and/or wantonly trained and/or supervised defendant Stell. [Complaint, ¶¶ 32-33, pp. 9-10] The elements of negligent supervision were discussed by our Supreme Court in Lane v. Central Bank of Ala., N.A., 425 So. 2d 1098 (Ala. 1983):

> "In the master and servant relationship, the master is held responsible for his servant's incompetence when notice or knowledge, either actual or presumed, . . . has been brought to him. Liability depends upon its being established by affirmative proof that such incompetence was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. <u>It is incumbent on the party charging negligence to show it by proper evidence.</u>" (emphasis added)

Id. at 1100. To recover on a claim of wanton supervision[7], it is not sufficient merely to allege or show that the employee acted incompetently; rather, a plaintiff must establish by affirmative proof that the employer actually knew of the incompetence or reasonably should have known of it. Armstrong Bus. Servics., Inc. v. AmSouth Bank, 2001 WL 996066 (Ala. Aug. 31, 2001). Thus, in order to avoid a summary judgment on their claim alleging negligent and/or wanton training and supervision, the Beatys <u>must</u> present substantial evidence indicating that AMS had notice or knowledge (actual or presumed) of the alleged incompetence of Stell.

---

[7] A claim of "wanton supervision" of an employee requires a showing that the employer wantonly disregarded its employee's incompetence. Armstrong Bus. Servs., Inc. v. AmSouth Bank, 2001 WL 996066 (Ala. Aug. 31, 2001).

Stell was a licensed insurance agent for over ten (10) years. Stell has never had his license suspended or revoked by any Department of Insurance. Stell has never had a complaint filed against him with the State of Alabama Department of Insurance. The Beatys never complained to AMS about Stell, nor did they file a complaint with the Department of Insurance. In fact, the Beatys have known Stell for ten to fifteen years and trusted him enough to purchase other products from him. [Depo. of J. Beaty, p. 25] Most significant is the fact that the Beatys contend that AMS negligently/wantonly trained its agent, Stell, such that he made misrepresentations to them in the sale of the insurance policy. [Complaint, ¶ 1, p. 2] However, when asked, the Beatys could not articulate what, if anything, Stell misrepresented to them. [Depo. of P. Beaty, p. 55 (Q: What facts do you have that you can tell me that indicate that what Mr. Stell told you about this policy was not correct? A: I don't have any facts.)]

Assuming the Beatys have been damaged by the acts of Stell, they have not established that the damage occurred because of any incompetence on Stell's part for which AMS might conceivably be liable for and thus their claim is due to be dismissed.

**IV.    Conclusion.**

Based upon the foregoing, the Beatys' claims against the defendants fail to present genuine issues of material fact and Alabama law requires that judgment be entered in favor of the defendants as to all of the Beatys' claims.

**DEFENDANTS RESPECTFULLY REQUEST ORAL ARGUMENT ON THIS MOTION.**

Respectfully submitted,

_____
Lynn Etheridge Hare (HAR110)
Kori L. Clement (CLB022)
Attorneys for Defendants
American Medical Security, Inc., United
Wisconsin Life Insurance Company, Ronald
M. Stell and Karen McCreary

OF COUNSEL:
HARE & CLEMENT, P.C.
Suite 1500, AmSouth-Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203
Telephone (205) 322-3040
Facsimile (205) 322-5577
E-Mail: hc@harelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record by placing a copy of same in the United States Mail, properly addressed and postage affixed, this the 30th day of November, 2001, as follows:

W. Lee Pittman, Esquire
J. Chris Cochran, Esquire
Pittman, Hooks, Dutton and Hollis, P.C.
1100 Park Place Tower
Birmingham, Alabama 35203

_____
OF COUNSEL

**EXHIBIT** 1

From:PITTMAN, HOOKS          205+328+2711          06⌐⌐Y2003 14:14 #070 P.046/082

362

**RECEIVE**
MAY 0 2 2001
HARE & CLEME

## IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA

| | |
|---|---|
| SHARON JACKSON, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED WISCONSIN LIFE INSURANCE COMPANY; AMERICAN MEDICAL SECURITY, INC., et al., | ) |
| Defendants. | ) |

CASE NO. CV-98-103

### ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDMENT AND SECOND AMENDMENT TO HER COMPLAINT

This matter is before the court on defendants' Motion to Dismiss Plaintiff's Amendment and Second Amendment to her complaint filed on July 17, 2000. After reviewing the pleadings, the arguments of counsel, the applicable statutory law and relevant case law, this court is of the opinion that the defendant's request for dismissal of both amendments is due to be GRANTED.

### ALABAMA TRADE PRACTICES LAW

Alabama Code § 27-12-1 *et seq.*, referred to as the "Trade Practices Law," outlines a system created by the Alabama legislature in order to regulate the insurance industry. Within this system of regulation is a commissioner who is given specific powers and duties to effectuate the administration and regulation of all laws relating to insurance rates and rating systems of insurance companies doing business within the state of Alabama. Ala. Code § 27-13-2. Among these powers expressly conferred or reasonably implied from the code are the power to approve insurance policy forms and endorsements; to approve rates and rating systems; to conduct examinations and investigations into

insurance matters as deemed proper, and, to invoke any legal, equitable or special remedy necessary to er͡ce the law. Ala. Code § 27-2-7 (197͡ )

These powers conferred on the commissioner are discussed extensively by the District Court in Allen v. State Farm Fire and Cas. Co., 59 F. Supp. 2d 1217 (S.D. Ala. 1999). In Allen, insureds brought a purported class action against the defendant insurance companies alleging breach of contract. 59 F. Supp. 2d at 1220. The court dismissed the plaintiff's complaint. As grounds for said dismissal, the court found that the insurance commissioner had the "exclusive authority to regulate the purported improper trade practices" and the plaintiffs would therefore need to present their claims to the insurance commissioner for consideration prior to filing a class action lawsuit as Alabama provides no private cause of action in this instance. Allen, 59 F. Supp. 2d at 1222.

In reaching this decision, the court analyzed the commissioner's role as set out by the legislature in Title 27 of the Code of Alabama and found that the "Alabama legislature has vested the commissioner with the discretion to determine whether a particular rate or rating system...is adequate and non-discriminatory." Id. The court in Allen recognized that the regulation of insurance rates and rating systems is a purely legislative function in Alabama. 59 F. Supp. 2d at 1229. The legislature created the department of insurance and gave this department the power to regulate, therefore preventing the courts from becoming enmeshed in the rate-making process. Id. The statutory process established by the Alabama legislature is self-policing and should not be undermined by a court. Id. at 1229.

Based on the designation of an insurance commissioner with broad authority to enforce rates and rating systems, the court in Allen found that the Trade Practices Law did not provide for a private cause of action. 59 F. Supp. 2d at 1230 (citing Farlow v. Union Central Life Ins. Co., 874 F.2d 791, 785 (11th Cir. 1989)). Instead, the Trade Practices Law designates the commissioner as the enforcer by specifically outlining remedies the commissioner may use and the procedures for pursuing those remedies. Id.

Following the reasoning of the District Court's decision in <u>Allen</u>, this court finds that the power to regulate insurance rates and the authority to remedy insurance rate violations has been instilled in the Department of Insurance, specifically the commissioner. This was and is the intent of the legislature as evidenced by Title 27 of the Code of Alabama. Therefore, this court cannot usurp the commisioner's power nor the legislature's intent.

### THE FILED-RATE DOCTRINE

The court in <u>Allen</u> looked beyond the commissioner's power and the courts lack of power to further determine that the filed-rate doctrine also barred the plaintiff's lawsuit against the defendant insurors. "The filed-rate doctrine prohibits collateral challenges to rates set by a regulatory agency thereby preserving the authority of such agency over determinations of the reasonableness of rates and insuring that entities charge only those rates that the agency has approved." <u>Allen</u>, 59 F. Supp. 2d at 1227. "Simply stated, the doctrine holds that any 'filed rate'-- that is, one approved by the governing regulatory agency--is per se reasonable and unassailable in judicial proceedings...." <u>Allen</u>, 59 F. Supp. 2d at 1227 (citing <u>Wegoland Ltd. v. NYNEX Corp.</u>, 27 F.3d 17,18 (2nd Cir. 1994)).

The defendants assert that the plaintiff's lawsuit is barred by the filed-rate doctrine as the court in <u>Allen</u> similiarly determined. The plaintiff argues that the filed-rate doctrine does not apply in this instance because the breach of contract alleged by the plaintiff is with regards to the defendant's classification of members as individuals in a group policy and not with regards to rates. This argument is not well taken when viewed in concert with the plaintiff's pleadings in this matter.

In the plaintiff's Second Amended Complaint, the plaintiff specifically mentions the rate plan filed with the State of Alabama Department of Insurance and alleges that the defendant's actions were contrary to that rate plan and structure. These allegations in the Second Amended Complaint do not support the plaintiff's contention that the breach of

From:PITTMAN, HOOKS     205+328+2711     06   2003 14:15 #070 P.049/082

defendant's argument that the suit is barred by the filed-rate doctrine. This contradiction in the plaintiff's argument is also evident in the plaintiff's Opposition Brief where she contends "[t]he thrust of the breach of contract claim is as follows: [t]he class plaintiffs contracted to purchase group insurance with group insurance premiums. United Wisconsin breached this contract by selling the class plaintiffs group insurance at individual rates." [Plaintiff's Opposition Brief, Section A., p.4]. Although this contention by the plaintiff in the Opposition Brief makes reference to a group classification, the primary focus appears to be on rates. The plaintiff essentially states that the breach occurred when an improper rate was charged to the plaintiff. This falls under the filed-rate doctrine as outlined and discussed in Allen and is therefore within the jurisdiction of the insurance department and the commissioner.

## CONCLUSION

Under Title 27 of the Alabama Code and the filed-rate doctrine, this court does not have jurisdiction to hear this matter. The plaintiff has failed to exhaust her administrative remedies through the Alabama Department of Insurance. Therefore, this matter is DISMISSED WITHOUT PREJUDICE so that the plaintiff may file a complaint with the Alabama Department of Insurance. However, the plaintiff may seek court intervention after the commissioner has ruled or has refused to hold a hearing on the issue. Allen, 59 F. Supp. 2d at 1226 (citing Ala. Code § 27-2-32(a) & (b) (1975)).

DONE and ORDERED this _____27TH_____ day of April, 2001.

John B. Bush, Circuit Judge